PETER ELIASBERG (State Bar No. 189910)
peliasberg@aclusocal.org
BRENDAN HAMME (State Bar No. 285293)
bhamme@aclusocal.org
ACLU Foundation of Southern California
1851 East 1st Street, Suite 450
Santa Ana, California 92705
Telephone:   (714) 450-3963
Facsimile:    (714) 543-5240

SOMIL TRIVEDI (*pro hac vice*)
strivedi@aclu.org
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, District of Columbia 20005
Telephone:  (202) 715-0802

Attorneys for Plaintiffs
(Additional Counsel for Plaintiffs on Following Page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| PEOPLE FOR THE ETHICAL OPERATION OF PROSECUTORS AND LAW ENFORCEMENT (P.E.O.P.L.E.), BETHANY WEBB, THERESA SMITH, and TINA JACKSON,<br><br>        Plaintiffs,<br><br>        vs.<br><br>ANTHONY J. RACKAUCKAS, in his official capacity as Orange County District Attorney, and SANDRA HUTCHENS, in her official capacity as Orange County Sheriff,<br><br>        Defendants. | Case No. 8:18-cv-00805-CJC-JDE<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:       July 23, 2018<br>Time:      1:30 p.m.<br>Judge:     Hon. Cormac J. Carney<br>Courtroom:  9B |

JACOB S. KREILKAMP (State Bar No. 248210)
jacob.kreilkamp@mto.com
JOHN L. SCHWAB (State Bar No. 301386)
john.schwab@mto.com
THOMAS RUBINSKY (State Bar No. 302002)
thomas.rubinsky@mto.com
ANNE K. CONLEY (State Bar No. 307952)
anne.conley@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

MARIANA KOVEL (*pro hac vice*)
mkovel@aclu.org
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
Telephone:   (646) 905-8870
Facsimile:   (212) 549-2654

Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF THE CASE .......................................................... 2

III.  ARGUMENT ...................................................................................... 4

    A.    Because Plaintiffs Lack Article III Standing, the Court Cannot Consider this Motion and Must Remand the Case ................................. 4

        1.    Article III Standing Is a Threshold Requirement of the Court's Jurisdiction and the Court Cannot Consider this Motion Without It ................................................................ 4

        2.    Remand, Not Dismissal, Is Appropriate When a Removed Case Lacks Article III Standing ....................................... 5

    B.    Although It Is Not Necessary for the Court to Reach an Analysis of the Merits of the Case, Plaintiffs Have Adequately Alleged Each of Their Claims ................................................................ 6

        1.    Plaintiffs Have Properly Asserted Section 1983 Claims ............. 6

        2.    Plaintiffs Have Properly Asserted California Constitution Claims .............................................................................. 9

        3.    Plaintiffs Have Properly Alleged Taxpayer Standing Under Section 526a .......................................................... 10

            (a)    Plaintiffs Have Adequately Alleged That Defendants' Actions Are Wasteful and Illegal, and Thus Appropriate for Challenge Via a Section 526a Suit .................................................................... 11

            (b)    Plaintiffs Qualify for Injunctive and Declaratory Relief Under California State Statutes and Case Law Because Section 526a Was Intended to be Construed Liberally to Allow Taxpayers to Challenge Wrongful Governmental Action ................. 12

        4.    Plaintiffs Have Standing Under Section 1085 to Receive a Writ of Mandate to Enforce Non-Discretionary Statutory Duties .............................................................................. 13

            (a)    There Is a Strong Public Interest in Enforcing These Statutes ....................................................... 15

            (b)    Plaintiffs Have Alleged a Clear and Present Duty .......... 17

            (c)    Plaintiffs Have Alleged That There Is No Adequate Remedy at Law to Correct These Violations ................... 19

1

**TABLE OF CONTENTS**
(continued)

2                                                                                                    **Page**

3   IV.    CONCLUSION ................................................................................21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*Arizona v. Fulminante,*

5
499 U.S. 279 (1991) ...................................................................... 3, 6

6

*ASARCO Inc. v. Kadish,*

7
490 U.S. 605 (1989) ...................................................................... 5, 7, 8

8

*Brady v. Maryland,*
373 U.S. 83 (1963) .................................................................... 1, passim

9

*Camacho v. Brandon,*

10
317 F.3d 153 (2d Cir. 2003) ............................................................... 7

11

*Chavez v. Martinez,*

12
538 U.S. 760 (2003) ........................................................................ 8

13

*City of Los Angeles v. Lyons,*

14
461 U.S. 95 (1983) ......................................................................... 12

15

*DaimlerChrysler Corp. v. Cuno,*

16
547 U.S. 332 (2006) ........................................................................ 6

17

*Davidson v. Kimberly-Clark Corp.,*

18
889 F.3d 956 (9th Cir. 2018) .............................................................. 5

19

*Epona v. Cty. of Ventura,*

20
876 F.3d 1214 (9th Cir. 2017) ............................................................. 7

21

*Fleck & Assocs., Inc. v. City of Phoenix,*
471 F.3d 1100 (9th Cir. 2006) .......................................................... 4, 5, 6

22

23

*Gallardo v. DiCarlo,*
203 F. Supp. 2d 1160 (C.D. Cal. 2002) .................................................... 4

24

*Gonzalez v. Tilmer,*

25
775 F. Supp. 256 (N.D. Ill. 1991) ......................................................... 9

26

*Lisker v. City of Los Angeles,*

27
780 F.3d 1237 (9th Cir. 2015) ............................................................. 9

28

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................ 7

*Mansfield, C. & L.M.R. Co. v. Swan*,
   111 U.S. 379 (1884) ................................................................................ 4

*Massiah v. United States*,
   377 U.S. 201 (1964) ......................................................................... 2, 6, 8

*Pelletier v. Fed. Home Loan Bank of S.F.*,
   968 F.2d 865 (9th Cir. 1992) .................................................................. 4

*Polo v. Innoventions Int'l, LLC*,
   833 F.3d 1193 (9th Cir. 2016) ............................................................ 5, 6

*Righthaven LLC v. Hoehn*,
   716 F.3d 1166 (9th Cir. 2013) ................................................................ 4

*Sanders v. Cullen*,
   873 F.3d 778 (9th Cir. 2017) .................................................................. 8

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)............................................................................ 7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .................................................................................. 4

*United States v. Ruiz*,
   536 U.S. 622 (2002) ................................................................................ 8

*Ventris v. Kansas*,
   No. 11–3013–SAC, 2011 WL 4436618 (D. Kan. Sept. 22, 2011)......................... 9

**STATE CASES**

*Bd. of Soc. Welfare v. Cty. of Los Angeles*,
   27 Cal. 2d 98 (1945) ............................................................................ 16

*Blair v. Pitchess*,
   5 Cal. 3d 258 (1971) ......................................................................... 8, 10

-iv-

1
2

# TABLE OF AUTHORITIES
### (continued)

Page(s)

3
4
*Bradley v. Lacy*,
    53 Cal. App. 4th 883 (1997)........................................................... 15, 18

5
6
*Cal. DUI Lawyers Ass'n v. Cal. Dep't of Motor Vehicles*,
    20 Cal. App. 5th 1247 (2018)........................................................ 8, 11

7
8
*California High-Speed Rail Authority v. Superior Court*,
    228 Cal. App. 4th 676 (2014)....................................................... 18, 19

9
*Dix v. Superior Court*,
    53 Cal. 3d 442 (1991) ................................................................. 14, 15

10
11
*Doe v. Albany Unified School District*,
    190 Cal. App. 4th 668 (2010)............................................................. 16

12
13
*Driving Sch. Ass'n of Cal. v. San Mateo Union High Sch. Dist.*,
    11 Cal. App. 4th 1513 (1992).............................................................. 20

14
15
*Hollman v. Warren*,
    32 Cal. 2d 351 (1948) ................................................................ 18, 19

16
17
*Leider v. Lewis*,
    2 Cal. 5th 1121 (2017) ............................................................... 10, 14

18
19
*Los Altos Prop. Owners Assn v. Hutcheon*,
    69 Cal. App. 3d 22 (1977) ................................................................. 11

20
*Love v. Keays*,
    6 Cal. 3d 339 (1971) ........................................................................ 13

21
22
*McDonald v. Stockton Met. Transit Dist.*,
    36 Cal. App. 3d 436 (1973) ............................................................... 16

23
24
*Mendoza v. Cty. of Tulare*,
    128 Cal. App. 3d 403 (1982) ......................................................... 8, 10

25
26
*Morris v. Harper*,
    94 Cal. App. 4th 52 (2001) ............................................................... 14

27
28
*Nunn v. State of Cal.*,
    35 Cal. 3d 616 (1984) ...................................................................... 18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*People v. Benson*,
  52 Cal. 3d 754 (1990) ................................................................... 2

*People v. Dekraai*,
  5 Cal. App. 5th 1110 (2016) ........................................................ 19

*People v. Jenkins*,
  22 Cal. 4th 900 (2000) .................................................................. 2

*People v. Lewis*,
  240 Cal. App. 4th 257 (2015) ...................................................... 17

*People v. Little*,
  59 Cal. App. 4th 426 (1997) ........................................................ 17

*Reynolds v. City of Calistoga*,
  223 Cal. App. 4th 865 (2014) ...................................................... 16

*Robertson v. Bd. of Library Trs. of Alameda Free Pub. Library &*
  *Reading Rooms*,
  136 Cal. 403 (1902) ..................................................................... 19

*Serrano v. Priest*,
  5 Cal. 3d 584 (1971) .................................................................... 11

*Van Atta v. Scott*,
  27 Cal. 3d 424 (1980) .................................................... 10, 13, 15

*Vest v. Super. Ct. in & for City & Cty. of S.F.*,
  140 Cal. App. 2d 91 (1956) ......................................................... 20

*Villery v. Dep't of Corr. & Rehab.*,
  246 Cal. App. 4th 407 (2016) ...................................................... 20

*Waste Mgmt. of Alameda Cty., Inc. v. Cty. of Alameda*,
  79 Cal. App. 4th 1223 (2000) ...................................................... 13

*Weiss v. City of Los Angeles*,
  2 Cal. App. 5th 194, 201 (2016) ............................................ 18, 20

*White v. Davis*,
  13 Cal. 3d 757 (1975) ................................................................ 1, 8

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Wilson*,
  3 Cal. 4th 945 (1992) ............................................................................. 3

*Wirin v. Horrall*,
  85 Cal. App. 2d 497 (1948) .................................................................. 11

*In re York*,
  9 Cal. 4th 1133 (1995) .......................................................................... 10

**FEDERAL STATUTES**

28 U.S.C. § 1447(c) ................................................................................ 5

42 U.S.C. § 1983 ........................................................................... 6, passim

**STATE STATUTES**

Cal. Civ. Proc. Code § 526a ........................................................ 1, passim

Cal. Civ. Proc. Code § 1085 ................................................... 5, 13, 14

Cal. Civ. Proc. Code § 1086 ................................................................ 16

Cal. Gov. Code § 3063 ........................................................................ 15

Cal. Pen. Code § 1054 ................................................................. 2, passim

Cal. Pen. Code § 1054.1 .................................................................. 17, 18

Cal. Pen. Code § 4001.1 .............................................................. 3, passim

Cal. Veh. Code § 40215 ...................................................................... 18

**FEDERAL RULES**

Fed. R. Civ. P. 8(a)(2) .......................................................................... 4

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 4

**CONSTITUTIONAL PROVISIONS**

Cal. Const. Art. 1, § 7 .................................................................... 2, 3, 9

# TABLE OF AUTHORITIES
### (continued)

Page(s)

Cal. Const. Art. 1, § 15 ........................................................................ 2, 9

U.S. Const. Art. III ........................................................................ 1, passim

## TREATISES

35 Am. Jurisprudence 73 § 322 .................................................. 16

## OTHER AUTHORITIES

Kathleen M. Ridolfi & Maurice Possley, N. Cal. Innocence Project,
   Preventable Error: A Report on Prosecutorial Misconduct in
   California 1997-2009 (2010), http://bit.ly/2jH8KJn ............................ 20

*Public Defender Scott Sanders Explains How He Solved OC's Snitch
   Scandal*, OC Register (Oct. 5, 2017),
   https://www.ocweekly.com/public-defender-scott-sanders-on-how-
   and-why-he-exposed-decades-long-cheating-by-ocda-and-ocsd-
   8475224/ (last visited June 30, 2018) .................................................. 20

1    **I.       <u>INTRODUCTION</u>**

2           Plaintiffs, who originally filed this case in state court and have separately

3    moved the Court to remand due to the lack of Article III jurisdiction, have alleged

4    policies, practices, and customs of pernicious violations of the rights of incarcerated

5    criminal defendants in Orange County by Defendants Tony Rackauckas and Sandra

6    Hutchens.  *See* Complaint, ECF No. 1; Motion for Remand, ECF No. 28.  Although

7    framed as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

8    Defendants' present motion actually argues only that Plaintiffs lack Article III

9    standing to proceed with their claims—a position with which Plaintiffs *agree*.  This

10   is why Plaintiffs properly brought this case in state court, under a state statute

11   establishing taxpayer standing that is broader than Article III standing.  *See White v.*

12   *Davis*, 13 Cal. 3d 757, 764 (1975) ("[T]he principles of justiciability in taxpayer's

13   suits under section 526a differ fundamentally from the restrictive federal doctrine

14   . . . .").

15          Lack of standing is Defendants' only argument.  Throughout their motion,

16   Defendants couch arguments about Plaintiffs' standing as failures to state a claim.

17   For example, Defendants attack Plaintiffs' lack of "actual harm or injury" as a

18   reason to dismiss substantive constitutional claims.  Defs. Mot. Dismiss, ECF No.

19   32 ("MTD") at 1.  They assert the fact that no Plaintiff was ever a "criminal

20   defendant" as the sole reason to dismiss Plaintiffs' *Brady* claims.  *Id.* at 7.  And they

21   assert that Plaintiffs cannot qualify for redress because a "substantial controversy

22   must exist."  *Id.* at 23.  Defendants' arguments regarding injunctive and declaratory

23   relief likewise almost exclusively cite cases addressing Article III standing.  *See*

24   MTD at 6-9, 10-11, 13-14, 19-23.  Regardless of how they are framed, virtually

25   every one of Defendants' positions in the MTD is a thinly veiled Article III standing

26   challenge.

27

28

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The Court should see the MTD for what it actually is—a wasteful challenge to Article III standing brought by the parties that sought to invoke federal jurisdiction in the first place—and send the case back to state court where it belongs.

## II.   STATEMENT OF THE CASE

As alleged in the Complaint, the Orange County District Attorney's Office ("OCDA") and the Orange County Sheriff's Department ("OCSD") for years have maintained polices, practices, and customs that violate clearly established, non-discretionary constitutional and statutory law designed to ensure the right to due process and the right to an attorney—fundamental rights aimed at ensuring the integrity of the criminal justice system itself.

First, Plaintiffs have alleged that Defendants routinely suppress evidence to which accused individuals in criminal cases are entitled, including evidence contained in multiple databases of information related to informants, in violation of the 5th and 14th Amendments to the U.S Constitution and Supreme Court holdings in *Brady v. Maryland*, 373 U.S. 83 (1963), and subsequent cases (First Cause of Action); Article 1, Section 7 of the California Constitution (Second Cause of Action);[1] and California Penal Code section 1054 (Third Cause of Action). *See, e.g.*, Compl. ¶¶ 25(f), 45, 65, 70, 94-107, 126-40.

Second, Plaintiffs allege that Defendants systematically use informants to elicit incriminating information from represented individuals, in violation of the 6th and 14th Amendments to the U.S. Constitution and Supreme Court holdings in *Massiah v. United States*, 377 U.S. 201 (1964), and subsequent cases (Fourth Cause of Action); Article 1, Section 15 of the California Constitution (Fifth Cause of

---

[1] *See People v. Jenkins*, 22 Cal. 4th 900, 950 (2000); *People v. Benson*, 52 Cal. 3d 754, 778 (1990) (in bank).

Action);[2] and California Penal Code section 4001.1(b) (Sixth Cause of Action). *See, e.g.*, Compl. ¶¶ 46, 51, 60-78, 141-52.

Third, Plaintiffs allege that Defendants routinely use informants to coerce information from people in their custody, often by threats of violence and even death, in violation of the 5th and 14th Amendment to the U.S. Constitution and Supreme Court holdings in *Arizona v. Fulminante*, 499 U.S. 279 (1991), and subsequent cases (Seventh Cause of Action); and Article 1, Section 7 of the California Constitution (Eighth Cause of Action). *See, e.g.*, Compl. ¶¶ 79-93, 153-60.

Fourth, Plaintiffs allege that in carrying out all of these violations, Defendants illegally expend public funds, violating California Civil Procedure Code section 526a, and vesting Plaintiffs with standing in California state court to challenge Defendants' policies, practices and customs of violating the aforementioned constitutional and statutory rights (Ninth Cause of Action). *See, e.g.*, Compl. ¶¶ 85, 161-62.

All of these allegations, which together more than adequately make out claims of serious, ongoing constitutional and statutory violations—and to which Defendants do not raise any factual sufficiency arguments—must be taken as true at this stage of the litigation.

Plaintiffs originally brought this Complaint in Orange County Superior Court. Defendants removed the action to this Court, invoking federal question jurisdiction. *See* Defs. Notice of Removal, ECF No. 1. Plaintiffs have filed a Motion to Remand, arguing that there is no Article III jurisdiction over this case and that the Court must remand it. *See* Pls. Motion to Remand, ECF No. 28. Defendants have now filed this Motion to Dismiss.

---

[2] *See In re Wilson*, 3 Cal. 4th 945, 949 (1992) (in bank).

### III.   <u>ARGUMENT</u>

"On a motion to dismiss, the court must accept the complaint's allegations as true in their entirety, and must draw all reasonable inferences in favor of the nonmoving party."  *Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992) (citations omitted).  The moving party bears the burden of demonstrating that Federal Rule of Civil Procedure 8(a)(2) has not been met.  *See Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1164-65 (C.D. Cal. 2002).  Defendants have not carried their burden.

#### A.   <u>Because Plaintiffs Lack Article III Standing, the Court Cannot Consider this Motion and Must Remand the Case</u>

##### 1.   Article III Standing Is a Threshold Requirement of the Court's Jurisdiction and the Court Cannot Consider this Motion Without It

Article III of the U.S. Constitution requires federal courts to satisfy themselves of their subject matter jurisdiction over a dispute before they consider the merits of that dispute.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"  *Id.* at 94-95 (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)) (alteration in original).  A court, therefore, cannot reach any merits issues in a case in which there is no Article III standing, as the court has no jurisdiction over such a case.  *See Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1106-07 (9th Cir. 2006).

Defendants' MTD pursuant to Federal Rule of Civil Procedure 12(b)(6) seeks an adjudication on the merits.  However, this Court cannot make a decision on the merits of this case unless Plaintiffs have Article III standing, *see Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013)—and *both* parties agree that Article III standing is lacking here.  This is why Plaintiffs have moved the Court to remand this action to state court.  *See* Pls. Mot. Remand, ECF No. 28.

-4-

By removing this case, Defendants asserted that this Court had original jurisdiction.  *See* Defs. Notice of Removal, ECF No. 1 at 2.  They cannot now turn around and seek dismissal on the basis of lack of injury and redressability without thereby admitting that removal was improper in the first instance:  If Plaintiffs have not suffered a redressable injury in fact, they lack Article III standing and this Court does not have jurisdiction over the merits of this action.

## 2.    Remand, Not Dismissal, Is Appropriate When a Removed Case Lacks Article III Standing

The Court *must* remand—not dismiss—this case if it agrees that Plaintiffs lack Article III standing.  *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." (emphasis added)).  "Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter.  State courts are not bound by the constraints of Article III."  *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).[3] This is equally true with regard to Plaintiffs' federal law claims.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n.6 (9th Cir. 2018) (remand is proper "whether the claims at issue are state or federal . . . .").

Plaintiffs properly asserted their claims in California state court under California's taxpayer and public interest standing doctrines.  *E.g.*, Cal. Civ. Pro. Code §§ 526a, 1085; Compl. ¶¶ 11, 13-21; *see also ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("We have recognized often that the constraints of Article III do not apply to state courts.").  Dismissal of any of the causes of action on the basis that Plaintiffs lack *federal* standing—much less dismissal of the entire case with prejudice, as Defendants request—would be improper when the state court can and

---

[3]  In cases that were originally filed in federal court, courts dismiss *without* prejudice when there is no Article III standing.  *Fleck & Assocs., Inc.*, 471 F.3d at 1106-07.

1   should hear those claims.[4]  *See Polo*, 833 F.3d at 1196; *Fleck & Assocs., Inc.*, 471

2   F.3d at 1106-07.

**B.    Although It Is Not Necessary for the Court to Reach an Analysis of the Merits of the Case, Plaintiffs Have Adequately Alleged Each of Their Claims**

5   The Court should deny Defendants' MTD, grant Plaintiffs' Motion to

6   Remand, award Plaintiffs their costs associated with moving to remand and

7   opposing this Motion, and leave it at that.  Once the Court has determined that

8   Article III standing is lacking, it is neither necessary nor appropriate for the Court to

9   conduct any further analysis of Defendants' arguments or of whether Plaintiffs have

10  stated a claim upon which relief may be granted.  However, in the event that the

11  Court nevertheless reaches these merits arguments, Defendants' motion must be

12  denied for the reasons outlined below.

**1.    Plaintiffs Have Properly Asserted Section 1983 Claims**

14  Defendants have separate sections in their motion dedicated to Plaintiffs'

15  federal *Brady*, *Massiah*, and *Fulminante* claims, but each section boils down to the

16  same argument that Plaintiffs have not alleged a personal injury, and that a personal

17  injury is an "essential element of [] Section 1983."  MTD at 8; *id.* at 5 (asserting as

18  to *Brady* claim that "nowhere in the Complaint is there a single allegation that

19  Plaintiffs' own rights were violated"); *id.* at 7 (asserting as to *Fulminante* claim that

20  "the Fifth Amendment protects *criminal defendants* from having statements used

21  against them . . . .") (emphasis in original); *id.* at 9 (asserting as to *Massiah* claim

---

23  [4]  The justiciability differences between California and federal courts provide a
24  compelling reason why the Court should not exercise supplemental jurisdiction over
     these state law claims, and should instead remand them.  However, because
25  Plaintiffs lack Article III standing, any supplemental jurisdiction would be improper
26  on that basis alone.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-52 (2006)
     ("What we have never done is apply the rationale of *Gibbs* to permit a federal court
27  to exercise supplemental jurisdiction over a claim that does not itself satisfy those
28  elements of the Article III inquiry, such as constitutional standing . . . .").

1  that "unless a person is a criminal defendant, whose right to counsel has attached,

2  and from whom an incriminating statement is elicited and used against the person in

3  a prosecution, there is no violation of the Sixth Amendment, and accordingly, no

4  section 1983 claim.").

5       These arguments are merely a different way of asserting that Plaintiffs lack

6  Article III standing to make these claims in federal court, where all plaintiffs must

7  allege a "'particularized'" injury that "'affect[s] the plaintiff in a personal and

8  individual way.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting

9  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  To the extent that Defendants

10  argue that asserting a personal right violation is not a standing requirement, but

11  rather an independent requirement of a Section 1983 claim, they are wrong: federal

12  courts allow plaintiffs to raise the constitutional rights of others in Section 1983

13  suits using the doctrine of third party standing.  *E.g.*, *Camacho v. Brandon*, 317 F.3d

14  153, 159-60 (2d Cir. 2003) (holding that the plaintiff in a Section 1983 suit could

15  raise the First Amendment rights of his politician employer).  Of course, third party

16  standing still requires a plaintiff to satisfy the elements of Article III standing.  *E.g.*,

17  *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1219-20 (9th Cir. 2017) (holding that the

18  plaintiff in a Section 1983 suit raising the rights of potential clients to the plaintiff's

19  wedding business had both Article III and third-party standing).  But even

20  considering only claims that are properly brought in federal court, Defendants

21  simply are wrong when they assert that Section 1983 claims never may vindicate the

22  rights of others.

23       "[T]he constraints of Article III," in any event, simply "do not apply to state

24  courts, and accordingly the state courts are not bound by the limitations of a case or

25  controversy or other federal rules of justiciability even when they address issues of

26  federal law . . . ."  *ASARCO Inc.*, 490 U.S. at 617.  California courts have thus heard

27  taxpayer suits challenging government policies, practices, customs, and actions that

28  violate federal constitutional rights without requiring the plaintiffs to allege personal

-7-

rights violations.  *E.g.*, *White*, 13 Cal. 3d at 762-63 (considering First Amendment claim brought via taxpayer standing); *Blair v. Pitchess*, 5 Cal. 3d 258, 264-65 (1971) (considering Fourth, Fifth, and Fourteenth Amendment claims brought via taxpayer standing even though the Plaintiffs did not allege that they personally suffered under the unconstitutional government action); *Cal. DUI Lawyers Ass'n v. Cal. Dep't of Motor Vehicles*, 20 Cal. App. 5th 1247, 1257-61 & n.1 (2018) (considering Fifth Amendment constitutional claims under 42 U.S.C. § 1983, brought via taxpayer standing); *Mendoza v. Cty. of Tulare*, 128 Cal. App. 3d 403, 407, 415 (1982) (considering constitutional claims under 42 U.S.C. § 1983, brought via taxpayer standing).  The California state court can properly hear this case, even if the federal court cannot.  *See ASARCO Inc.*, 490 U.S. at 620 ("[T]he state courts are not bound by Article III and yet have it within both their power and their proper role to render binding judgments on issues of federal law, subject only to review by [the Supreme] Court.").

In an attempt to sidestep this conclusion, Defendants cast the constitutional rights at issue as purely individual trial rights that require Plaintiffs to have suffered an individual criminal prosecution in which their rights were violated.  *See* MTD at 5-9.  Defendants thus cite federal cases in which the rights at issue were described as trial rights, based on the facts of those cases.  *E.g.*, *Chavez v. Martinez*, 538 U.S. 760, 767-69 (2003) (Fifth Amendment right against admission of involuntary confession); *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (*Brady* violations); *Sanders v. Cullen*, 873 F.3d 778, 812 (9th Cir. 2017) (*Massiah* violation).

Here, Plaintiffs have properly brought *Monell* claims—not individual claims seeking to vindicate trial rights—against Defendants' unconstitutional policies, practices, and customs of violating federal constitutional rights through their confidential Informant Program.  *See* Statement of the Case, *supra;* Compl. ¶¶ 24-25.  Courts recognize a plaintiff's ability to challenge unconstitutional policies, practices, and customs that violate a criminal defendant's constitutional rights

through *Monell* and individual Section 1983 suits.  *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1241(9th Cir. 2015) (considering a *Monell* claim based on alleged policies and practices of *Brady* violations); *Gonzalez v. Tilmer*, 775 F. Supp. 256, 260 (N.D. Ill. 1991) (considering a Section 1983 suit based on whether a confession was unconstitutionally coerced regardless of whether the statement was admitted at trial); *Ventris v. Kansas*, No. 11–3013–SAC, 2011 WL 4436618, at * 3 (D. Kan. Sept. 22, 2011) (considering a Section 1983 claim based on violations of the plaintiff's Sixth Amendment rights as pronounced in *Massiah*).

In addition, Plaintiffs *are* asserting the repeated violation of criminal defendants' individual trial rights in Orange County: Defendants' "misconduct has tainted numerous cases—the precise number is yet unknown, and that uncertainty is part of the reason this lawsuit is necessary."  Compl. ¶ 6.  The Complaint alleges that Defendants operate an unconstitutional jailhouse Informant Program that targets criminal defendants even if they are represented by counsel, and uses informants known to threaten violence in obtaining confessions.  Compl. ¶¶ 46, 60-70, 72, 76-78, 80-93.  The Complaint also alleges that Defendants hid this program and related evidence from criminal defendants in violation of their obligations under the Constitution and *Brady*.  Compl. ¶¶ 45-48, 58-59, 65, 70, 96-106.  These allegations identify, among others, Scott Dekraai, Leonel Vega, Derek Adams, Luis Vega, Henry Rodriguez, Jose Derosas, Joseph Govey, and Nuzzio Begaren, as being involved in criminal cases affected by Defendants' unconstitutional conduct.  Compl. ¶¶ 61-65, 76, 90-92, 95-100, 102.  Plaintiffs have properly pleaded policies, practices, and customs under *Monell*.

## 2.    Plaintiffs Have Properly Asserted California Constitution Claims

Plaintiffs have also brought corresponding civil rights claims under the California Constitution Article 1, Sections 7(a) and 15, through California taxpayer and public interest standing.  Compl. ¶¶ 11, 13-21, 131-35, 145-48, 157-60.  Despite

recognizing that California's due process rights are "more expansive than the U.S. Constitution," Defendants make the same arguments against Plaintiffs' California Constitution claims as they do against Plaintiffs' Section 1983 claims.  *See* MTD at 9-11.  Defendants again argue that Plaintiffs fail to state a claim because they have not suffered personal rights violations—a federal standing argument that ignores California case law allowing such claims in taxpayer suits.

Plaintiffs have adequately pled violations of the California Constitution.  *See, e.g.*, Compl. ¶¶ 131-35, 145-48.  Just as with Plaintiffs' federal constitutional claims, Plaintiffs' claims under the California Constitution do not have to be based on personal rights violations.  "[U]nlike the federal Constitution, [California's] state Constitution has no case or controversy requirement imposing an independent jurisdictional limitation on [state] standing doctrine."  *Weatherford v. City of San Rafael*, 2 Cal. 5th 1241, 1247-48 (2017).  California courts thus hear taxpayer cases that bring state constitutional claims regardless of whether the plaintiff alleged a personal rights violation.  *E.g.*, *Blair*, 5 Cal. 3d at 269.  It also does not matter that other plaintiffs who did suffer personal violations could bring the same claim—both types of plaintiffs are allowed to proceed in California courts.  *E.g.*, *Mendoza*, 128 Cal. App. 3d at 415 ("Nonetheless, the existence of directly affected individuals who might also have standing to sue does not preclude a taxpayer's suit.") (citing *Van Atta v. Scott*, 27 Cal. 3d 424, 447-48 (1980) ("Numerous decisions have affirmed a taxpayer's standing to sue despite the existence of potential plaintiffs who might also have had standing to challenge the subject actions or statutes."), *abrogated on other grounds by statute as stated in In re York*, 9 Cal. 4th 1133, 1143 & n.7 (1995)).

### 3.  Plaintiffs Have Properly Alleged Taxpayer Standing Under Section 526a

In order to sue under California Civil Procedure Code section 526a, plaintiffs merely have to show that they pay taxes to the agency or municipality whose

-10-

1   spending they are challenging.  *See Weatherford*, 2 Cal. 5th at 1250.  Plaintiffs'

2   Complaint contains sufficient facts to establish standing to challenge the OCDA and

3   OCSD's unconstitutional and wasteful conduct under section 526a.  Compl. ¶¶ 13-

4   21.  Plaintiff P.E.O.P.L.E. is an association of Orange County residents that includes

5   at least one member who pays property taxes in Orange County.  *Id.* ¶ 13.  Plaintiff

6   Bethany Webb individually pays property taxes to Orange County.  *Id.* ¶¶ 15-21.

7   These allegations alone are sufficient to bring a taxpayer action under section 526a.

8              (a)    *Plaintiffs Have Adequately Alleged That Defendants'*
                      *Actions Are Wasteful and Illegal, and Thus Appropriate*
9                     *for Challenge Via a Section 526a Suit*

10         Defendants assert that Plaintiffs have failed to state a claim for relief under

11  California Code of Civil Procedure section 526a because Plaintiffs have not made

12  sufficient allegations "relating to illegal expenditures."  MTD at 18.  But Defendants

13  are wrong on the law.  Merely "expending the time" of government officials who

14  are "performing illegal and unauthorized acts" constitutes an unlawful use of funds

15  which can be enjoined under section 526a.  *Wirin v. Horrall*, 85 Cal. App. 2d 497,

16  505 (1948); *see also Serrano v. Priest*, 5 Cal. 3d 584, 618-19 (1971) (holding that

17  county officials can be enjoined from "spending" their time carrying out an

18  unconstitutional law under section 526a); *Cal. DUI Lawyers Ass'n.*, 20 Cal. App.

19  5th at 1251 ("[A] government entity is engaging in 'waste' by implementing and

20  maintaining a . . . system that violates [constitutional] rights.").  Section 526a cases

21  are consistently construed liberally to enable citizens to challenge governmental

22  action that would otherwise go unchecked due to standing or other requirements.

23  *Los Altos Prop. Owners Assn v. Hutcheon*, 69 Cal. App. 3d 22, 26-28 (1977)

24  (collecting cases that apply section 526a in a wide variety of circumstances).

25         Reading the Complaint in the light of the correct law, it robustly alleges

26  Defendants' expenditure of governmental time and resources on illegal and

27  unauthorized acts—allegations that must be taken as true at this stage of the

28  proceedings.  *See, e.g.*, Compl. ¶¶ 14, 16, 162.  In the operation of the jailhouse

Informant Program, these acts include cultivating confidential informants to participate in the program, placing informants in proximity to target criminal defendants to facilitate their interrogation without counsel, taking time off informants' sentences in exchange for the collection of incriminating statements, keeping detailed logs and databases of informant movements and interactions with criminal defendants, and employing special government personnel in the Special Handling Unit to maintain these records—to say nothing of paying the informants vast amounts of taxpayers' money as part of an illegal scheme. *Id.* ¶¶ 25, 32-33, 35, 38, 43-44, 51, 68-69, 72, 77, 85.  OCSD sheriffs have also expended government time and resources to lie under oath and shred documents in failed efforts to keep the Informant Program and its records secret. *Id.* ¶¶ 29, 55-56, 73.  Finally, the OCDA has unlawfully spent taxpayer money by suppressing or failing to request evidence that could expose these violations, by using the information in criminal trials, and by refusing to produce related favorable information to defense counsel. *Id.* ¶¶ 31, 45-48, 65, 70, 74, 76, 78.

> (b)   *Plaintiffs Qualify for Injunctive and Declaratory Relief Under California State Statutes and Case Law Because Section 526a Was Intended to be Construed Liberally to Allow Taxpayers to Challenge Wrongful Governmental Action*

Defendants also argue that Plaintiffs are not entitled to injunctive or declaratory relief.  MTD at 19-23.  Defendants question Plaintiffs' injury in fact, purported lack of an adequate legal remedy, whether a permanent injunction would serve the public interests, and whether plaintiffs have alleged an "actual controversy."  MTD at 19-22.  To the extent that Defendants are once again raising Article III standing and federal requirements for relief, that does not bar Plaintiffs' claims.  *E.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 113 (1983) ("[S]tate courts need not impose the same standing or remedial requirements that govern federal court proceedings.");  *Weatherford*, 2 Cal. 5th at 1247-48 ("Unlike the federal

Constitution, our state Constitution has no case or controversy requirement imposing an independent jurisdictional limitation on our standing doctrine.").

Further, section 526a plainly contemplates injunctive relief; indeed, it resides in the section of the Code of Civil Procedure entitled "Injunction."  Cal. Civ. Proc. Code, part 2, tit. 7, chap. 3.  And California courts have recognized the propriety of citizens bringing taxpayer standing suits for *all* forms of relief: injunctive, declaratory, damages, and mandamus.  *See, e.g.*, *Weatherford*, 2 Cal. 5th at 1249; *Van Atta*, 27 Cal. 3d at 449-50 ("[I]n furtherance of the policy of liberally construing section 526a to foster its remedial purpose, our courts have permitted taxpayer suits for declaratory relief, damages and mandamus."); *Love v. Keays*, 6 Cal. 3d 339, 341 (1971) (hearing a taxpayer suit for injunctive and declaratory relief).  Section 526a "provides a mechanism for controlling illegal, injurious, or wasteful actions" by the government.  *Weatherford*, 2 Cal. 5th at 1249.  Plaintiffs have alleged sufficient facts indicating that Defendants have wasted money on their illegal confidential Informant Program, and that the wasteful and illegal use of government resources is likely to be ongoing.  *E.g.*, Compl. ¶¶ 118-25.  Plaintiffs are therefore entitled to petition for injunctive and declaratory relief.

### 4. Plaintiffs Have Standing Under Section 1085 to Receive a Writ of Mandate to Enforce Non-Discretionary Statutory Duties

In their Third and Sixth Causes of Action, Plaintiffs seek a writ of mandate pursuant to the California Code of Civil Procedure section 1085 to enforce California Penal Code sections 1054 and 4001.1(b).[5]  Compl. ¶¶ 136-40; 149-52.

---

[5] Plaintiffs P.E.O.P.L.E. and Bethany Webb also have standing to pursue a writ of mandate as taxpayers via section 526a.  "[T]axpayer standing has been extended to actions for declaratory relief, *mandamus* and, in some circumstances, damages."  *Waste Mgmt. of Alameda Cty., Inc. v. Cty. of Alameda*, 79 Cal. App. 4th 1223, 1240 (2000) (emphasis added), *overruled on other grounds by Save the Plastic Bag Coal. v. City of Manhattan Beach*, 52 Cal. 4th 155 (2011).  As noted *supra*, the complaint alleges that plaintiffs are taxpayers in Orange County.

Section 1085 provides that "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." Cal. Civ. Proc. Code § 1085(a). "Under this section, mandate will lie to compel performance of a clear, present, and usually ministerial duty." *Morris v. Harper*, 94 Cal. App. 4th 52, 58 (2001).

California Penal Code section 1054 *et seq.* guarantees due process of law by setting forth unambiguous and mandatory requirements for the disclosure of evidence in criminal proceedings, including what evidence must be disclosed and the timeline on which it must be disclosed. California Penal Code section 4001.1(b) prohibits informants from taking any action "beyond merely listening to statements of a defendant" to elicit incriminating remarks. Because there is a strong public interest in the enforcement of these statutes, and because they delegate a "clear, present, and . . . ministerial duty" to Defendants, Plaintiffs are entitled to seek a writ of mandamus.

Defendants rely heavily on *Dix v. Superior Court*, 53 Cal. 3d 442 (1991), and *Leider v. Lewis*, 2 Cal. 5th 1121 (2017), in arguing that Plaintiffs cannot use a writ of mandamus to enforce a penal law. MTD at 14. This argument is misplaced. Neither *Dix* nor *Leider* nor any related cases involved enforcement of mandatory statutory duties. *Leider* merely stands for the common sense proposition that a private individual cannot prosecute another individual for commission of a crime through a civil action. 2 Cal. 5th at 1130-31.[6]

_____

[6] These cases are grounded in several concerns, none of which are applicable here. First, the courts were concerned about allowing actions to prevent criminal conduct as a nuisance because of the vagueness of nuisance cases. 2 Cal. 5th at 1130-31. Second, allowing enforcement of criminal law through a civil action would deprive a defendant of their constitutional right to a jury trial. *Id*. at 1131. Third, doing so would make defendants liable under a lower standard of proof than during a

1    While it is true that "[t]he prosecutor ordinarily has sole discretion to

2  determine whom to charge, what charges to file and pursue, and what punishment to

3  seek," *Dix*, 53 Cal. 3d at 451, prosecutors and law enforcement do *not* have

4  discretion to choose whether or not to comply with the disclosure rules set forth by

5  section 1054, or to use informants in violation of section 4001.1.  Both sections

6  prescribe, in absolute terms, actions that prosecutors and law enforcement must or

7  cannot take.  Defendants' argument that prosecutorial discretion would be impinged

8  by a writ mandating compliance with these sections falls flat.

9    Indeed, the *Dix* court explicitly contemplated the ability of citizens to bring a

10  taxpayer action about criminal justice issues, and indicated that its decision posed no

11  bar to such actions.  *Dix*, 53 Cal. 3d at 454 n.7 ("[N]othing we say here affects

12  *independent* citizen-taxpayer actions raising criminal justice issues.") (emphasis in

13  original) (citing Cal. Civ. Proc. Code § 526a; *Van Atta*, 27 Cal. 3d at 447–52).

14  *Bradley v. Lacy*, 53 Cal. App. 4th 883 (1997), also is instructive.  There, a citizen

15  taxpayer petitioned for a writ of mandate ordering the District Attorney to comply

16  with a California Government Code section that requires the District Attorney to

17  commence prosecution following a grand jury indictment.  *Id.* at 887.  Like

18  Plaintiffs, the taxpayer in *Bradley* had no evident connection to the indictment at

19  issue, *id.*, and the court recognized the District Attorney's broad discretion in

20  criminal matters generally, *id.* at 890-92.  Nevertheless, the court looked to the text

21  of the relevant code provision, *id.* at 888-90, determined that it created a non-

22  discretionary duty, and ordered that a writ be issued against the District Attorney, *id.*

23  at 887, 895 ("We conclude the district attorney's duty to comply with Government

24  Code section 3063 . . . is mandatory.  Accordingly, we reverse.").

25        *(a)    There Is a Strong Public Interest in Enforcing These
            Statutes*

26

27  ──────────────────
   criminal trial.  *Id.*  Fourth, defendants could then be prosecuted and exposed to

28  similar punishments under criminal law.  *Id.*

-15-

1    Although section 1086 normally requires petitioners to have a "beneficial

2    interest" in the enforcement of the non-discretionary duty, "where the question is

3    one of public right and the object of the mandamus is to procure the enforcement of

4    a public duty, the relator need not show that he has any legal or special interest in

5    the result, since it is sufficient that he is interested as a citizen in having the laws

6    executed and the duty in question enforced . . . ." *Bd. of Soc. Welfare v. Cty. of Los*

7    *Angeles*, 27 Cal. 2d 98, 100-01 (1945) (quoting 35 Am. Jurisprudence 73, 76 § 322).

8    Plaintiffs have amply alleged a strong public interest in enforcing the statutes in

9    question.

10    Plaintiffs allege over thirty years of discovery violations and informant

11    misuse dating back to and beyond the passage of Penal Code sections 1054 and

12    4001.1.  *See, e.g.*, Compl. ¶¶ 2-5.  Defendants' failure to comply with their statutory

13    duties has undermined the public's faith in the OCDA and OCSD and in their ability

14    to pursue justice.  *Id.*  The public interest in mandating that Defendants comply with

15    their duties under Penal Code sections 1054 and 4001.1(b), therefore, is significant.

16    "When the duty is sharp and the public need weighty, the courts will grant a

17    mandamus at the behest of an applicant who shows no greater personal interest than

18    that of a citizen who wants the law enforced."  *Reynolds v. City of Calistoga*, 223

19    Cal. App. 4th 865, 875 (2014) (quoting *McDonald v. Stockton Met. Transit Dist.* 36

20    Cal. App. 3d 436, 440 (1973)).

21    Defendants argue that "the public right exists only when expressly established

22    by the Legislature," but they misread the cases on which they rely.  MTD at 15-16.

23    Indeed, *Doe v. Albany Unified School District* stands for the very opposite of what

24    Defendants have claimed. 190 Cal. App. 4th 668, 683 (2010).  After its discussion

25    of the beneficial interest standard, the *Doe* court recognized the breadth of the public

26    interest exception.  *Id.* at 685 ("This public interest exception 'promotes the policy

27    of guaranteeing citizens the opportunity to ensure that no governmental body

28    impairs or defeats the purpose of legislation establishing a public right.'") (citations

-16-

omitted).  And Defendants' other cases simply do not stand for (let alone assert) the proposition that the legislature must "expressly establish" a public right.  Here, the rights established by Penal Code sections 4001.1 and 1054 apply to every single person living in the state; surely the sanctity of such universal procedural protections are a matter of statewide concern.

*(b)*     *Plaintiffs Have Alleged a Clear and Present Duty*

California Penal Code section 1054.1 establishes a clear and present duty on Defendants to disclose certain evidence to criminal defendants, including any evidence they might have created related to the Informant Program.  The code's plain language and interpreting authority make clear that this duty is mandatory, not discretionary.  *See People v. Lewis*, 240 Cal. App. 4th 257, 266 (2015) ("[W]e are unconvinced by the prosecution's insistence that it had no obligation to reveal any information related to Switzer's misconduct.  California's criminal discovery statutes *require* the prosecution to disclose '[a]ny exculpatory evidence' to the defense. . . .") (emphasis added) (citation omitted); *People v. Little*, 59 Cal. App. 4th 426, 432 (1997) ("Section 1054.1 concisely lists six specific items that the prosecution *must disclose* to the defendant or his or her attorney, and, consistent with the stated purposes of discovery provisions of Proposition 115, the prosecution has a duty to inquire in order to satisfy these requirements.") (emphasis added).

Defendants' duty to abstain from using informants to elicit post-charge incriminating information under Penal Code section 4001.1(b) is similarly clear, present, and non-discretionary:  "*No law enforcement agency* and no in-custody informant acting as an agent for the agency, may take some action, beyond merely listening to statements of a defendant, that is deliberately designed to elicit incriminating remarks."  Cal. Penal Code § 4001.1(b) (emphasis added); *see also* Compl. ¶¶ 45, 101 (alleging that an OCDA Senior Deputy admitted that informant-

related information in the Nuzzio Begaren case "should have been produced pursuant to Penal Code section 1054.1"), 107, 137-139, 150-151.[7]

Defendants assert that Plaintiffs' claims "do not identify a duty owed by OCSD and the OCDA *to Plaintiffs*."  MTD at 17 (emphasis added).  But Defendants misunderstand the law.  The "clear and present duty" requirement for mandamus asks only whether, as a matter of statutory construction, a statute creates an obligation on the part of the government official to engage in or abstain from certain conduct.  *See Bradley*, 53 Cal. App. 4th at 889 ("Whether a particular statute is intended to impose a mandatory duty is a question of [statutory] interpretation.") (quoting *Nunn v. State of Cal.*, 35 Cal. 3d 616, 624 (1984)); *Weiss v. City of Los Angeles*, 2 Cal. App. 5th 194, 201 (2016), *review denied* (Nov. 22, 2016) ("Based on the language of section 40215, subdivision (a) and relevant legislative history, we hold . . . that the City is required to" comply with the section).  Defendants cite no authority for the position that the required "duty" must be owed to a particular person to merit a writ of mandamus.

Defendants also assert that mandamus cannot lie for "purported acts that have taken place in the past."  MTD at 17.  This also is incorrect.  In *Weiss*, for example, the Court of Appeal upheld a writ ordering the City of Los Angeles to comply with the mandatory elements of Vehicle Code section 40215 going forward, even though petitioner had already paid the parking citation that prompted the suit. 2 Cal. App. 5th at 203.  Furthermore, Plaintiffs have adequately alleged that the violations in the Complaint are ongoing.  Compl. ¶¶ 118-20; 122, 124-25.[8]

_____

[7] Given these allegations, Defendants' assertions that only Paragraph 124 of the Complaint alleges a clear and present duty, and that Plaintiffs' request for mandamus is based on a "custom and practice with nothing more," MTD at 17, are incorrect.

[8] Neither *California High-Speed Rail Authority v. Superior Court*, 228 Cal. App. 4th 676 (2014), nor *Hollman v. Warren*, 32 Cal. 2d 351 (1948) defeat Plaintiffs' petition

*(c)    Plaintiffs Have Alleged That There Is No Adequate Remedy at Law to Correct These Violations*

Defendants assert that because underlying criminal defendants wronged by the Informant Program may have (or have had) recourse within their criminal cases, Plaintiffs have not alleged the absence of an "adequate remedy at law."  MTD at 17-18.  Defendants again are incorrect.  Even assuming that it is proper to assess Plaintiffs' mandamus request through the lens of criminal defendants—which it is not—it is still not true that there is an adequate remedy for Defendants' habitual violations of Penal Code sections 1054 and 4001.1(b).  "To supersede the remedy by mandamus, the party must not only have a specific, adequate, legal remedy, but one competent to afford relief upon the very subject-matter of his application, and one which is equally convenient, beneficial, and effective as the proceeding by mandamus."  *Robertson v. Bd. of Library Trs. of Alameda Free Pub. Library & Reading Rooms*, 136 Cal. 403, 406 (1902).  Defendants assert that trial judges could remedy Defendants' violations via sanction or suppression, or that criminal defendants could appeal or submit habeas petitions.  MTD at 18.  But none of these are "competent to afford relief upon the very subject-matter" of Plaintiffs' application, which is a system-wide illegal regime.  As the California Court of Appeal stated, "the magnitude of the systemic problems [in the offices] cannot be overlooked."  *People v. Dekraai*, 5 Cal. App. 5th 1110, 1149 (2016).  Systemic problems call for systemic solutions.

---

for mandamus.  In *California High-Speed Rail Authority*, the court found that the statute the petitioners sought to enforce (compelling issuance of a preliminary funding plan before the legislature considered and voted on an overall project) could no longer be enforced because the "critical time period ha[d] passed."  228 Cal. App. 4th at 710.  In *Hollman*, the court found that there was simply no mandatory duty owed to petitioner.  32 Cal. 2d at 361.  Here, by contrast, there is an ongoing obligation by Defendants to carry out their statutory duties under sections 1054 and 4001.1 with all current and future criminal defendants they prosecute.

1    Further, each of Defendants' proposed individualized remedies could well be

2  fruitless for reasons unrelated to the merits of a criminal defendant's claim that

3  Defendants violated the law.  *See, e.g.*, *Villery v. Dep't of Corr. & Rehab.*, 246 Cal.

4  App. 4th 407, 415-16 (2016) (holding that habeas was not a better vehicle than a

5  writ of mandate, which "is the traditional remedy for the failure of a public official

6  to perform a legal duty.") (internal citation and quotation marks omitted); *Vest v.*

7  *Super. Ct. in & for City & Cty. of S.F.*, 140 Cal. App. 2d 91, 96 (1956) (comparing

8  direct appeal to a writ of mandate).  Moreover, individual criminal defendants,

9  particularly those proceeding pro se, may not have the resources or expertise to

10  pursue all these options.  *See Driving Sch. Ass'n of Cal. v. San Mateo Union High*

11  *Sch. Dist.*, 11 Cal. App. 4th 1513, 1519 (1992).

12    Most importantly, Defendants' proposed alternatives ignore the reality that

13  most criminal defendants in Orange County never *discover* Defendants' violations

14  of sections 1054 and 4001.1, because these violations occur exclusively under

15  Defendants' own watch.  *See* Kathleen M. Ridolfi & Maurice Possley, N. Cal.

16  Innocence Project, Preventable Error: A Report on Prosecutorial Misconduct in

17  California 1997-2009 at 36 (2010), http://bit.ly/2jH8KJn ("Brady violations are, by

18  their nature, difficult to uncover; they become apparent only when the withheld

19  material becomes known in other ways.").  Scott Dekraai's attorney, Scott Sanders,

20  has said that it was "enormous luck" that led him to the violations in Dekraai's case,

21  and those violations took seven years of litigation to remedy.  R. Scott Moxley,

22  *Public Defender Scott Sanders Explains How He Solved OC's Snitch Scandal*, OC

23  Register (Oct. 5, 2017), https://www.ocweekly.com/public-defender-scott-sanders-

24  on-how-and-why-he-exposed-decades-long-cheating-by-ocda-and-ocsd-8475224/

25  (last visited June 30, 2018).  For those who were not as lucky, and those inevitable

26  scores of future defendants who will not be as lucky, there is no other remedy as

27  plain, speedy, and adequate as mandamus—and the declaratory and injunctive

28  relief—sought via this lawsuit.  *See Weiss*, 2 Cal. App. 5th at 201 (without

mandamus, "the important public interest raised by his petition would be effectively insulated from judicial review.").

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny Defendants' Motion to Dismiss in its entirety, and grant Plaintiffs' motion to remand.


DATED:  July 2, 2018                    ACLU FOUNDATION OF SOUTHERN
                                        CALIFORNIA
                                        PETER ELIASBERG
                                        BRENDAN HAMME

                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
                                        SOMIL TRIVEDI
                                        MARIANA KOVEL

                                        MUNGER, TOLLES & OLSON LLP
                                        JACOB S. KREILKAMP
                                        JOHN L. SCHWAB
                                        THOMAS RUBINSKY
                                        ANNE K. CONLEY




                                        By:      */s/ Jacob S. Kreilkamp*

                                        Attorneys for Plaintiffs

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

This is to certify that on this 2nd day of July, 2018, a true and correct copy of the foregoing document was filed electronically via the CM/ECF system, which gave notice to all counsel of record pursuant to Local Rule 5-3.2.1.


/s/ *Jacob S. Kreilkamp*
Jacob S. Kreilkamp